25cv2816 PJS/LIB

**Donald G. Sauve,**
Plaintiff,

v.

**Haley Marie Sauve (aka Lindstrom), Benjamin Kaasa, Judge Stoney Hiljus (in individual capacity), Officers Does 1–10, and Civilian John and Jane Does,**
Defendants.

Case No. _____

Warren E. Burger Federal Building and U.S. Courthouse
316 North Robert Street - Suite 100
St. Paul, MN 55101

Diana E. Murphy United States Courthouse
300 South Fourth Street - Suite 202
Minneapolis, MN 55415

RECEIVED BY MAIL

JUL 1 0 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES

## I. INTRODUCTION

This action arises from the systemic and coordinated deprivation of the civil, statutory, and constitutional rights of Donald G. Sauve, a 68-year-old medically disabled and vulnerable adult Minnesota resident. As a direct result of the acts and omissions by the named Defendants — including state agents, judicial officers, and private actors — Plaintiff has been forcibly removed from his solely owned homestead, denied access to medication and care, and prevented from closing a lawful mortgage intended to resolve all equitable claims.

Plaintiff asserts the only debt potentially owed to any Defendant is child support, which remains pending adjudication. The subject property is wholly owned by Plaintiff, free of mortgage encumbrances, and traceable to pre-marital ownership.

Defendants' actions have deprived Plaintiff of property, liberty, and due process in violation of:

- 42 U.S.C. § 1983

- Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)

- The Rehabilitation Act (29 U.S.C. § 794)

- 42 U.S.C. § 1985(3) (civil conspiracy)

- Minnesota state law claims: trespass, conversion, IIED, and constructive fraud.

SCANNED

JUL 1 0 2025

U.S. DISTRICT COURT MPLS

## II. JURISDICTION & VENUE

- **Jurisdiction: 28 U.S.C. §§ 1331, 1343(a)(3–4), 1367(a)**

- **Venue: 28 U.S.C. § 1391(b), as all events occurred in Minnesota**

## III. PARTIES

- Plaintiff: Donald G. Sauve, pro se, medically disabled, resident of Kanabec County

- Defendant Haley Marie Sauve (Lindstrom): former spouse, instigator

- Defendant Benjamin Kaasa: attorney for Lindstrom, coordinated process

- Defendant Judge Hiljus: acted outside judicial immunity

- Does 1–10: assisting officers and court staff

- John/Jane Does: civilian intruders and conspirators

## IV. FACTUAL ALLEGATIONS

1. **Plaintiff is the sole titled owner of 2026 Highway 23, Mora, MN.**

   **1B.** Plaintiff is the sole titled owner of the subject property, recorded in county land records. As a matter of Minnesota law, a titled landowner **cannot be lawfully evicted via unlawful detainer or sheriff's enforcement absent foreclosure or a civil title judgment.** See **Minn. Stat. § 504B.285** (eviction available only against tenants or unauthorized occupants); *State v. Colvin,* **645 N.W.2d 449, 452 (Minn. 2002)** ("A person cannot trespass on property to which he holds legal title.").

   **1C.** Plaintiff was not in breach of any rental or mortgage agreement. No foreclosure, quiet title, or partition proceeding had occurred. Defendants' actions — forcibly removing Plaintiff without such proceedings — constitute an unlawful seizure of real property and deprivation of constitutional and state rights under color of law.

2.

3. **As a titled landowner, he could not be evicted under Minnesota law without foreclosure or judgment.** *Minn. Stat. § 504B.285*; *State v. Colvin,* **645 N.W.2d 449, 452 (Minn. 2002).**

4. Premarital status confirmed on record by Plaintiff's former attorneys, Bob Roby and Michelle.

5. Kaasa visibly reacted when shown the original HUD receipt; receipt later disappeared. Plaintiff kept a photographic copy.

6. Plaintiff filed motions in state court—to delay enforcement due to rotator cuff surgery and pending mortgage—but they were ignored.

7. On Sunday, March 2, 2025 (~10 a.m.), approximately 10 people (some civilians) entered Plaintiff's home, disabled cameras, stole items including his service dog.

8. Plaintiff was recovering from surgery and under opioid medication at the time.

9. Video evidence documents the tampering, mocking, and theft.

10. Judge Hiljus struck Plaintiff's pleadings, denied emergency relief, and refused ADA accommodations—violating due process.

11. Kaasa filed false OFP violations and manipulated court processes in coordination with Lindstrom.

12. Lindstrom refused to sign a quitclaim deed needed to close mortgage, threatening title and foreclosure.

13. Plaintiff's nursing, Meals on Wheels, and medical services were terminated due to forced displacement.

14. Service process misconduct:

- Kaasa caused Lindstrom to pick up original orders from courthouse; they were served via sheriff with Kaasa's cover letter—violating *Minn. R. Civ. P. 77.04* (court administrator must serve).

- See *Tombs v. Ashworth*, 37 N.W.2d 591, 595 (Minn. 1959).

- This deprived Plaintiff of notice and review, violating *Minn. R. Civ. P. 5.04* and Fourteenth Amendment due process (*Fuentes*, 407 U.S. 67; *Mitchell*, 416 U.S. 600).

---

## V. LEGAL CLAIMS

**Count I – ADA (42 U.S.C. § 12132)**
Defendants denied Plaintiff court access and housing accommodations in violation of Title II. *Tennessee v. Lane*, 541 U.S. 509 (2004).

**Count II – § 1983 – Due Process Deprivation**
Defendants, under color of law, deprived Plaintiff of process and property by:

- improper service (violating *Minn. R. Civ. P. 77.04*; *Tombs*)

- forcibly removing a titled owner in violation of *Minn. Stat. § 504B.285*; *Colvin*

- executing seizure without notice/hearing (*Fuentes*; *Mitchell*)

- ignoring ADA accommodation needs

**Count III – § 1985(3) – Civil Conspiracy**
Kaasa, Lindstrom, and others conspired to deprive Plaintiff of rights. *Griffin v. Breckenridge*, 403 U.S. 88.

**Count IV – Trespass and Conversion**
Defendants unlawfully entered and seized property, including service animal.

**Count V – Constructive Fraud / Abuse of Process**
Using judicial process during ongoing litigation to block mortgage constituted abuse, causing harm.

---

## VI. RELIEF REQUESTED

Plaintiff respectfully seeks:

1. Declaratory judgment of violations under federal and state law

2. Emergency injunction: restore possession, block title transfer, compel quitclaim

3. Monetary damages (compensatory, punitive)

4. Equitable offset for premarital title and harm caused

5. Civil contempt sanctions for noncompliance

6. Costs and attorney's fees under § 1988

7. Referral to DOJ for civil rights and disability monitoring

---

## VII. PRAYER FOR RELIEF

Federal court protection requested for disabled vulnerable adult senior citizen unlawfully removed from home. Plaintiff seeks full relief—including declaratory and injunctive remedies, damages, and costs—to restore constitutional and statutory rights. Evidence referenced (photos, videos, sheriff reports) is available.

## Addendum to VI. RELIEF REQUESTED

8. **Award of Full Legal and Physical Custody**
   Plaintiff seeks full legal and physical custody of the minor children due to the ongoing and severe parental alienation perpetrated by Defendant Haley Marie Sauve (a/k.a. Lindstrom), which has caused significant psychological harm to the children. This alienation has disrupted the parent-child relationship and violated the children's best interests.

Plaintiff requests that the Court:

- Order an independent family systems evaluation by a licensed forensic psychologist;

- Enforce public school placement to remove undue external influence;

- Mandate trauma-informed counseling for the children consistent with Renowned Authorities Dr. Jamie Turndorf's and Dr. Susan Heitler's clinical guidance on reunification and family therapy;

- Grant Plaintiff full custody with structured visitation for Defendant Lindstrom, contingent on her participation in therapy and cessation of alienating conduct.

Plaintiff further requests referral of Defendant Lindstrom to appropriate legal authorities for potential prosecution under Minn. Stat. § 609.26 (deprivation of parental rights) and/or for contempt and obstruction based on willful interference with lawful custody and court orders.

Plaintiff respectfully requests full legal and physical custody of the minor children based on clear and ongoing acts of parental alienation perpetrated by Defendant Haley Marie Sauve (a/k.a. Lindstrom). These actions have resulted in psychological harm, manipulation of therapeutic processes, and irreparable damage to the children's perception of the Plaintiff.

Specifically:

- Defendant Lindstrom weaponized court-ordered counseling sessions to deepen alienation rather than support reunification. She repeatedly inserted disparaging narratives during therapeutic settings, violating the spirit and structure of reunification therapy.

- Defendant falsely told the parties' youngest daughter — who is emotionally bonded with animals — that Plaintiff had "killed a cat." This misrepresentation omitted the

exculpatory truth: that the animal had been mortally injured by Defendant's mother in a vehicular accident, and Plaintiff humanely euthanized the suffering animal.

- Defendant's refusal to correct this narrative has fostered trauma, mistrust, and fear in the child, constituting emotional abuse and manipulation contrary to the child's best interest.

These behaviors are consistent with what Renowned Authority Dr. Susan Heitler, Ph.D., describes as "alienating behaviors" in her clinical model, which identifies coercive narratives, therapy sabotage, and intentional reputational damage as forms of psychological control that necessitate custody transfer and structured therapeutic intervention.
See: *Heitler,  (2013). "Parental Alienation: When Therapists Enable Bad Behavior." Psychology Today.*

*These behaviors are consistent with what Renowned Authority Dr. Susan Heitler, Ph.D., identifies as "alienating behaviors" in her clinical model, which includes:*

- Coercive narratives,

- Sabotage of therapeutic processes, and

- Intentional reputational damage to the targeted parent —

as forms of psychological control that undermine the parent-child bond. According to Dr. Heitler, these tactics often necessitate custody transfer and structured therapeutic intervention to prevent lasting emotional harm to the child.

> See: Heitler, S. (2013). *"Parental Alienation: When Therapists Enable Bad Behavior,"* Psychology Today.
> See also: Heitler, S. (2013). *"Severe Parental Alienation: A Mental Health Emergency,"* Psychology Today.

As Dr. Heitler notes, these cases are often under recognized or mishandled:

> *"Do therapists and courts recognize these cases? Do they respond effectively? Often, they do not — to the long-term detriment of the children involved."*

Accordingly, Plaintiff urges the Court to treat the alienation in this matter as a psychological emergency, consistent with national best practices and established clinical authority.

Plaintiff seeks:

- Immediate award of sole custody;

- Court-supervised reunification therapy;

- Public school placement for educational stability;

- Restriction of Lindstrom's visitation pending therapeutic compliance;

- Referral to prosecutorial authorities for violation of Minn. Stat. § 609.26 (Interference with Custodial Rights), and sanctions under the court's inherent contempt powers.

### Parental Alienation as Psychological Abuse

The emotional damage inflicted on the minor children in this matter aligns with what clinical experts define as Severe Parental Alienation, recognized by professionals such as Dr. Susan Heitler, Ph.D., as a mental health emergency. Dr. Heitler emphasizes that alienation tactics — including manipulation of therapeutic environments, spreading of false narratives, and deliberate sabotage of the parent-child relationship — constitute emotional abuse with lasting psychological harm.

> *"Severe parental alienation inflicts trauma on children, warps their ability to trust, and results in long-term estrangement, identity distortion, and depression."*
> — Heitler, S. (2013), *Psychology Today*

### Indicators of Coached Responses and Emotional Programming

Plaintiff has experienced multiple interactions with his minor children that strongly suggest they were subjected to coercive coaching and emotional scripting by Defendant Lindstrom. During a court-authorized visit, one child responded to Plaintiff's genuine question, *"Why did Mom take you from home?"* with the phrase, *"Because you're mean and you yell."* The reply was unnaturally rehearsed and lacked the spontaneous speech patterns expected in a young child's response.

Even more alarming, during sworn testimony, Plaintiff's son — when asked, *"What did I ever do to you?"* — responded with the phrase, *"You hit me in the face repeatedly,"* accompanied by visible tears. Plaintiff was stunned, as this was not only categorically false but used unnaturally legalistic and exaggerated wording, indicative of suggested or coached memory implantation.

According to Dr. Susan Heitler, Ph.D., these kinds of statements are textbook markers of severe parental alienation, which often involves:

- Repetitive coaching or scripting of children to deliver false allegations

- Use of exaggerated emotional displays under guidance or pressure

- Substitution of implanted beliefs for personal experience

*"In severe cases, alienated children repeat false claims with adult-like phrasing and exaggerated affect — hallmarks of manipulation, not independent perception."*
— Heitler, S., *Psychology Today*, 2013

These behaviors not only damage the children's psychological health but also pose a serious threat to procedural fairness and judicial truth-finding. The presence of coached allegations — particularly those that mimic legal accusations — should alert the Court to the urgency of professional intervention, therapeutic reunification, and possible custody modification in the best interests of the children.

Courts have also acknowledged the seriousness of this phenomenon. In In re Marriage of Rosenfeld, 668 N.W.2d 840 (Minn. Ct. App. 2003), the Minnesota Court of Appeals upheld a custody modification where one parent's alienating behavior severely damaged the children's well-being.

Similarly, District Courts nationwide have transferred custody upon finding intentional alienation that undermines reunification and violates the child's best interests. In such circumstances, legal precedent and psychological ethics demand therapeutic reintegration and often, a change of primary custody to protect the child from ongoing harm.

Plaintiff submits that this case meets — and exceeds — the threshold for court-ordered intervention, reunification therapy, and a shift in custodial authority to prevent further damage.

## RULE 10(c) – EXHIBITS

(Plaintiff incorporates the following upon access or order):
A. Property deed/title
B. Medical records
C. Photography and video of intrusion
D. Court filings and delay motions
E. Sheriff's entry reports
F. Affidavits from witnesses

---

Respectfully submitted,

Date: June 24, 2025
/s/ Donald Gerard Sauve
Donald Gerard Sauve, Pro Se
2026 Hwy 23, Mora, MN 55051

---